**HI–TECH PHARMACEUTICALS, INC., Plaintiff,**

**v.**

**HERBAL HEALTH PRODUCTS, INC., Dynamic Health Products, Inc., Innovative Companies, Inc., and Online Meds Rx, Inc., Defendants.**

**No. CIV.A. 103CV2486WBH.**

United States District Court, N.D. Georgia, Atlanta Division.

March 1, 2004.

---

Michael Joseph Powell, Baker Donelson Bearman & Caldwell, Atlanta, GA, G. Steven Henry, phv, Baker Donelson Bearman Caldwell & Berkowtiz, Birmingham, AL, for Hi–Tech Pharmaceuticals, Inc., plaintiff.

Steven G. Hall, Joshua Tropper, Gambrell & Stolz, Atlanta, GA, J. Todd Timmerman, phv, Shumaker Loop & Kendrick, Tampa, FL, Henry D. Fellows, Jr., Fellows Johnson & La Briola, Atlanta, Constantine W. Papas, phv, Gray Harris Robinson, Shackleford Farrior, Tampa, FL, for Herbal Health Products, Inc. dba Dynamic Life, Inc., Dynamic Health Products, Inc., Innovative Companies, Inc. dba Innovative Health Products, Inc., Online Meds Rx, Inc. fka Dynamic Life, Inc., defendants.

## ORDER

HUNT, District Judge.

Before the Court is Plaintiff Hi–Tech Pharmaceuticals, Inc.'s ("Hi–Tech") Mo-

tion for Preliminary Injunction [26]. On February 24, 2004, the Court held a hearing on the motion at which all parties were represented. After consideration of the arguments and evidence presented in the briefs and at the hearing, the Court declines to enter a preliminary injunction.

## BACKGROUND

On August 20, 2003, Hi–Tech filed this action against Defendants Herbal Health Products ("Herbal"), Dynamic Health Products ("Dynamic"), Innovative Companies ("Innovative"), and Online Meds RX asserting the following claims: (1) trademark and trade dress infringement under Section 32 of the Lanham Act; (2) trademark and trade dress infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act; (3) trademark and trade dress dilution under Section 43(c) of the Lanham Act; and (4) trademark and trade dress infringement, unfair competition, trademark dilution, and deceptive trade practices under Georgia law. Approximately four months later, Hi–Tech filed the motion for preliminary injunction presently before the Court.

Hi–Tech began selling Stamina–Rx, a dietary supplement for improving sexual performance, in April 2001. Hi–Tech's president, Jared Wheat, applied for registration of the STAMINA–RX mark with the United States Patent and Trademark Office, and the mark was registered on August 5, 2003 (Reg. No. 2,745,913). The Stamina–Rx product is packaged in a blue hexagonally-shaped tablet. The tablets are contained in a clear bottle with a white top. The label on the bottle has a dark background and includes the STAMINA–RX mark, an image of a robot-like being

with arms raised holding a sphere, and the words "maximum sexual stimulant."[1] Hi–Tech asserts property rights in the STAMINA–RX mark, trade dress consisting of the overall appearance of the packaging, and trade dress consisting of the overall appearance of the hexagonally-shaped, color-coated tablets.

Hi–Tech advertises and promotes Stamina–Rx through printed brochures and flyers, magazine advertisements, trade show promotions, free samples, a NAScAR advertising campaign, nationally televised commercials, hexagonally-shaped blister packs, and internet advertisements. Hi–Tech's trade channels include retail stores, gyms and fitness centers, adult novelty stores, health food and gym distributors, convenience store distributors, and adult novelty distributors. To date, Hi–Tech has committed approximately $17 million to advertising and has received approximately $15 million in gross revenues from the sale of Stamina–Rx.

In late 2002, Hi–Tech agreed to sell Stamina–Rx to Defendants Herbal and/or Dynamic for distribution to consumers in Jamaica. Around May 2003, Defendants stopped buying Stamina–Rx and began manufacturing, marketing, and selling their own dietary supplement for improving sexual performance called Stamina-Pro.[2] The StaminaPro product is also packaged in blue hexagonally-shaped tablets that are contained in a clear bottle with a white top. The label on the bottle has a dark background and includes the STAMINAPRO mark, an image of a robot-like being with his arms by his sides, and the words "maximum male sexual enhancement formula." The label also contains

---

1. Testimony at the hearing revealed that in the last thirty days, Hi–Tech started using a label that bears the image of a Stamina–Rx tablet instead of a robot-like being.

2. Hi–Tech is currently opposing registration of the STAMINAPRO mark.

the statement "compare to Stamina–Rx ™."

According to Hi–Tech, Defendant Innovative reverse-engineered and/or replicated the Stamina–Rx tablets, and Defendants are now promoting and selling a confusingly similar but inferior product at a lower price in direct competition with Hi–Tech. On May 27, 2003, Hi–Tech contacted Defendants and demanded that they cease and desist from manufacturing, producing, marketing, advertising, promoting, and selling StaminaPro. On June 2, 2003, Defendants refused Hi–Tech's demand for them to cease and desist, prompting Hi–Tech to file this action. Hi–Tech now asks the Court to enjoin Defendants from the following:

(1) offering for sale, selling, advertising, or manufacturing any dietary supplement for improving sexual performance under the name StaminaPro or any mark incorporating the term "STAMINA" as a dominant part of the mark;

(2) offering for sale, selling, advertising, or manufacturing any dietary supplement for improving sexual performance using tablets or pills having a hexagonal shape;

(3) offering for sale, selling, advertising, or manufacturing any dietary supplement for improving sexual performance which is either (a) bottled in a clear container having a label with a dark central background upon which the term STAMINA is printed and below which background tablets or pills are visible, or (b) bottled in a clear container having a label with a dark central background upon which the combination of a graphic image of a robotic being and the terms "maximum" and "sexual" are printed, or (c) bottled in a clear container having a white cap wherein tablets, pills, caplets, or capsules of a blue color are visible below or behind a label; and

(4) expressly or impliedly representing by words or conduct, or encouraging directly or indirectly others to represent by words or conduct, that any of the defendants are affiliated with Hi–Tech or that any of their dietary supplement products are authorized, sponsored, or endorsed by or otherwise connected with Hi–Tech, and in particular, representing that any of defendants' dietary supplements are the same as, identical to, or an improved formula of Hi–Tech's Stamina–Rx products, or are the "new Stamina–Rx" or the "Stamina–Rx replacement."

## DISCUSSION

■ To be entitled to the extraordinary relief of a preliminary injunction, Hi–Tech must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction does not issue; (3) that the threatened injury to Hi–Tech outweighs the harm the injunction may cause Defendants; and (4) that granting the injunction would be in the public interest. Hi–Tech must meet the burden of persuasion equally with regard to all four factors in the preliminary injunction analysis. *See Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir.2002). For the reasons set forth below, the Court concludes that Hi–Tech has not carried its burden with respect to these four factors.

### A. Likelihood of Success

■ To prevail on its trademark infringement claims, Hi–Tech must establish that (1) its mark has priority; and (2) Defendants' mark is likely to cause confusion. *Carnival Brand Seafood v. Carnival Brands,* 187 F.3d 1307, 1309 (11th Cir. 1999). To determine likelihood of confusion, the Court considers seven factors: (1) the type of mark; (2) similarity of the marks; (3) similarity of the products of-

fered by Hi–Tech and Defendants; (4) similarity of sales methods and customers; (5) similarity of advertising methods; (6) Defendants' intent; and (7) actual confusion. *Frehling Enters. v. International Select Group*, 192 F.3d 1330. 1335 (11th Cir.1999) (noting that the most important factors are type of mark and evidence of actual confusion).

██ To prevail on its trade dress infringement claims, Hi–Tech must show that: (1) its trade dress is inherently distinctive or has acquired secondary meaning; (2) its trade dress is primarily nonfunctional; and (3) Defendants' trade dress is confusingly similar. *See Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 210–11, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Factors considered in assessing whether trade dress has acquired secondary meaning include length and manner of use, nature and extent of advertising and promotion, efforts to promote a conscious connection in the public's mind between the trade dress and the product, and the extent to which the public actually identifies the trade dress with the product. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir.1984).

██ Without expressing an opinion as to whether Hi–Tech will ultimately prevail on the merits of its claims, the Court finds that Hi–Tech has not presently demonstrated a substantial likelihood of success. With respect to trademark infringement, Hi–Tech has not shown that the two most important factors in the likelihood of confusion analysis weigh in its favor. Defendants put forth a persuasive argument that STAMINA–RX is not entitled to the protection of a fanciful or arbitrary mark, and, more importantly, Hi–Tech has not clearly demonstrated the nature and extent of confusion in the marketplace. Hi–Tech has not undertaken any consumer surveys and the record contains no sworn consumer testimony. Similarly, with respect to trade dress infringement, the evidence presented by Hi–Tech does not clearly demonstrate that its trade dresses are distinctive or have acquired secondary meaning. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1540 (11th Cir.1986) (recognizing that extensive sales and advertising alone do not necessarily establish secondary meaning).[3]

**B. Irreparable Harm**

██ Even assuming that Hi–Tech had established a likelihood of success on the merits of its claims, the Court nevertheless concludes that Hi–Tech is not entitled to a preliminary injunction because it has not demonstrated a substantial threat of irreparable harm. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000) (holding that even when likelihood of success has been established, the absence of irreparable injury, standing alone, makes preliminary injunctive relief improper).

In its brief, Hi–Tech argued that irreparable harm should be presumed because it has made a prima facie showing of likelihood of confusion. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir.1998) (citing *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985)) (a substantially strong showing of likelihood of confusion may by itself constitute a showing of irreparable harm). As discussed above, however, it is not clear to the Court that Hi–Tech has made such a showing. Moreover, Hi–Tech's delay in seeking a preliminary injunction weighs against a finding of irreparable harm. *See, e.g., Seiko Kabush-*

---

**3.** Defendants make much of allegations that Hi–Tech violated certain provisions of the federal Food, Drug, and Cosmetic Act, necessitating the recall of four lots of Stamina–Rx.

However, the Court has concluded that these allegations and the resulting consent decree would not serve as a bar to preliminary injunctive relief.

*iki Kaisha v. Swiss Watch International, Inc.*, 188 F.Supp.2d 1350, 1355–56 (S.D.Fla.2002) (citing cases for the general proposition that delay in seeking an injunction "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement").

Hi–Tech has also argued that, absent an injunction, it will suffer irreparable harm in the form of lost business and damage to its reputation. However, this argument is contradicted by Wheat's own testimony that sales of Stamina–Rx have exceeded $3 million in the last month, and the product is currently on back-order. Furthermore, it is not clear that these kinds of injuries, to the extent they are proven at trial, cannot be redressed with money damages. *See Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir.1987) (noting that an injury is irreparable only if it cannot be undone through monetary remedies); *Barnes v. Burger King Corp.*, 1994 U.S. Dist. LEXIS 21005 at *16 (S.D.Fla. July 31, 1994) (finding that lost profits and even the loss of the business itself could be reasonably calculated in monetary terms). While the loss of goodwill may constitute irreparable harm under certain circumstances, Hi–

Tech has not provided sufficient evidence to support such a finding here.

## C. Balance of Harms and Public Interest

As a general matter, the Eleventh Circuit recognizes that enjoining illegal infringement activity and preventing consumer confusion in the marketplace serves the public interest. *See Davidoff & Cie, S.A. v. PLD International Corp.*, 263 F.3d 1297, 1304 (11th Cir.2001). However, because Hi–Tech has not sufficiently demonstrated the extent of confusion in the marketplace, it is not clear that granting the injunction would be in the public interest. Similarly, the Court cannot say that any threatened injury to Hi–Tech outweighs the harm that Defendants will suffer if they are forced to shelve or discard their product.

## CONCLUSION

For the reasons set forth above, Plaintiff Hi–Tech Pharmaceuticals, Inc.'s Motion for Preliminary Injunction [26] is DENIED.