[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14390
_____

D.C. Docket No. 1:14-cv-21385-JAL


WREAL, LLC,
a Florida limited liability company,

Plaintiff - Appellant,

versus

AMAZON.COM, INC.,
a Delaware corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 28, 2016)

Before JORDAN, ROSENBAUM, and SILER,[*] Circuit Judges.

ROSENBAUM, Circuit Judge:

This is an interlocutory appeal from a district court's denial of a preliminary injunction in a reverse-confusion trademark dispute concerning the mark "FyreTV." The district court denied the injunction because, among other reasons, the plaintiff pursued its preliminary-injunction motion with the urgency of someone out on a meandering evening stroll rather than someone in a race against time. Because the district court did not abuse its discretion in denying the injunction, we affirm.

**I.**

Plaintiff-Appellant Wreal, LLC, is a Miami-based technology company that was formed in 2006 with the goal of developing a platform for streaming video content over the internet. In connection with its business of supplying "telecommunications access to video and audio content provided via a video on demand service via the internet," Wreal registered the marks "FyreTV" and "FyreTV.com" with the U.S. Patent and Trademark Office on October 14, 2008, and has used those marks in commerce continuously since 2007. Through FyreTV, Wreal exclusively streams adult content, the majority of which is

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

hardcore pornography.  In fact, Wreal describes its own FyreTV service as the "Netflix of Porn."

Wreal's streaming service was initially available over its website, FyreTV.com, and through a proprietary set-top box.  The set-top box, known alternatively as the "FyreTV box" and the "FyreBoXXX," has been available to only those customers who sign up for a FyreTV account on Wreal's website; the device has not been sold in any other venue or on any other website.  Wreal subsequently developed a FyreTV application to enable streaming over third-party devices and has shifted its business model away from selling its own boxes and towards streaming over the internet and third-party devices.

In 2011, Amazon started using the mark "Fire" in connection with its Kindle tablets—the "Kindle Fire"—to highlight the new model's ability to stream video over the internet.  In 2012 and 2013, Amazon was developing several new products, including a new generation of tablets, a phone, and a set-top box, and it decided to use the "Fire" brand, along with its house brand of "Amazon," with all of these products.  On April 2, 2014, Amazon launched its set-top box, dubbed the "Amazon Fire TV."  Amazon Fire TV is a hardware device used for streaming "mainstream" "general interest" video via Amazon's own streaming service, "Instant Video," or third-party streaming services such as Netflix.  Amazon was

3

aware of Wreal's FyreTV mark when it launched Fire TV but did not contact Wreal before launching Fire TV.

Just about two weeks after the launch of Fire TV, Wreal filed a complaint against Amazon in federal court on April 17, 2014, seeking treble damages and injunctive relief under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a). Wreal also sought relief under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, and Florida common law.

Despite the alacrity with which Wreal filed its complaint, for months, Wreal conducted no discovery and made just routine, case-management filings in the district court. Then, on September 22, 2014—over five months after filing its complaint—Wreal moved for a preliminary injunction. After conducting an evidentiary hearing, the magistrate judge recommended that the district court deny Wreal's injunction request, finding that Wreal failed to establish any of the prerequisites for a preliminary injunction. Wreal filed objections, and, after a *de novo* review, the district court overruled those objections and denied Wreal's preliminary-injunction motion. This interlocutory appeal ensued.

## II.

To obtain a preliminary injunction, Wreal must make the following four showings:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the

4

injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *accord Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).  A preliminary injunction is an "extraordinary and drastic remedy," and Wreal bears the "burden of persuasion" to clearly establish all four of these prerequisites.  *See Siegel*, 234 F.3d at 1176 (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

We review a district court's denial of a preliminary injunction for abuse of discretion.  *Robertson*, 147 F.3d at 1306.  A district court abuses its discretion when its factual findings are clearly erroneous, when it follows improper procedures, when it applies the incorrect legal standard, or when it applies the law in an unreasonable or incorrect manner.  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004).  But as its name implies, the abuse-of-discretion standard "allows a range of choices for the district court, so long as any choice made by the court does not constitute a clear error of judgment."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 77 (11th Cir. 2013).

Appellate review of a preliminary-injunction decision in particular is exceedingly narrow because of the expedited nature of the proceedings in the district court.  *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission*

*Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005).  Our review is deferential since a district court often must make difficult judgments about the viability of a plaintiff's claims based on a limited record and "without the luxury of abundant time for reflection."  *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171-72 (11th Cir. 2002).  So a plaintiff faces not only a tough road in establishing four prerequisites to obtain a preliminary injunction in the first instance, but, on appeal, must also overcome the steep hurdles of showing that the district court clearly abused its discretion in its consideration of each of the four prerequisites.  *See BellSouth*, 425 F.3d at 968.

## III.

Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms its appeal.  *See Siegel*, 234 F.3d at 1176.  In this case, the district court concluded that Wreal's unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury.  The district court did not abuse its discretion in reaching this conclusion.

A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm.  A preliminary injunction requires showing "imminent" irreparable harm.  *Siegel*, 234 F.3d at 1176-77 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v.*

6

*City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)).  Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits.  *Cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1539 (11th Cir. 1989).  For this reason, our sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm. *See, e.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *Taylor v. Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013) (citing *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983)); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439-40 (E.D.N.Y. 2013); *Hi-Tech Pharm., Inc. v. Herbal Health Prods.*, Inc., 311 F. Supp. 2d 1353, 1357-58 (N.D. Ga. 2004); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355-56 (S.D. Fla. 2002).

Both in the district court and on appeal, Wreal has failed to offer any explanation for its five-month delay.  Nor can we discern from the record any justification for the delay that would suggest that the district court made an error in judgment by pointing to the delay to find a lack of imminent irreparable harm.  In fact, as the district court observed, the preliminary-injunction motion relied

7

exclusively on evidence that was available to Wreal at the time it filed its complaint in April 2014.  Simply put, the district court did not abuse its discretion when it concluded that Wreal failed to demonstrate an imminent injury that would warrant the "extraordinary and drastic remedy" of a preliminary injunction.  *See Siegel*, 234 F.3d at 1176; *cf. Yakus v. United States*, 321 U.S. 414, 440, 64 S. Ct. 660, 674 (1944) ("The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff.").

Because Wreal cannot establish reversible error with respect to the injury prong, we need not consider whether the district court correctly analyzed the likelihood of success, the balance of harms, or the public interest.  Accordingly, the district court's denial of the preliminary injunction is **AFFIRMED**.