[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14257

Non-Argument Calendar

_____

BETHUNE-COOKMAN, UNIVERSITY, INC.,

Plaintiff-Appellant,

*versus*

DR. MARY MCLEOD BETHUNE NATIONAL
ALUMNI ASSOCIATION, INC.,
JOHNNY L. MCCRAY, JR.,
individually,
MARY MCLEOD BETHUNE NATIONAL ALUMNI
ASSOCIATION, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-00047-WWB-DAB

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

This is an interlocutory appeal from a district court's denial of a preliminary injunction in a trademark-infringement case. The district court denied the injunction because the plaintiff waited more than six months to seek injunctive relief after filing its complaint, and so, in the court's view, did not establish that it would be irreparably harmed without an injunction. Because the district court did not abuse its discretion, we affirm.

**I.**

Plaintiff-Appellant Bethune-Cookman University, Inc., is a private historically Black university in Florida founded by Dr. Mary McLeod Bethune. The University has registered various trademarks and service marks, including "BETHUNE-COOKMAN," "FLORIDA CLASSIC," the University's seal, and an angled view of a wildcat's head. The University regularly used these marks in its efforts to raise money to further its mission.

Defendant-Appellee Dr. Mary McLeod Bethune National Alumni Association, formerly known as the National Alumni Association of Bethune-Cookman University, Inc., is an independent, not-for-profit corporation. Defendant-Appellant Johnny McCray is

22-14257                 Opinion of the Court                           3

the Alumni Association's President.  We refer to the defendants collectively as the "Alumni Association."[1]

The Alumni Association previously worked with the University to raise funds and recruit students, among other things, using the University's marks in connection with these activities.  But in September 2021, the University ended that cooperative relationship and sent cease-and-desist letters demanding that the Alumni Association stop using its marks and making representations that it was affiliated with the University.  In place of the Alumni Association, the University intended to establish a "Direct Support Organization" to comply with more stringent accreditation standards.  Counsel for the Alumni Association responded that it would comply by the end of October 2021.

But despite the University's clear demands to cease and desist, according to the University, the Alumni Association "continued to represent that it is authorized to contact the University's alumni and solicit donations for the University, and otherwise, willfully infringe upon and dilute the University's Marks by using them without permission."  For instance, while the Alumni Association removed "Bethune-Cookman University" from its name, it added "Dr. Mary McLeod Bethune" and included images of Dr. Bethune and the university campus in its logo.

---

[1] It appears the Alumni Association later dropped the "Dr." from its name, prompting the University to file an amended complaint naming that entity as an additional defendant.

**II.**

So on January 7, 2022, the University filed a complaint in federal court against the Alumni Association, seeking damages and injunctive relief under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and Florida state law for trademark infringement, false designation of origin, dilution, and unlawful trade practices. The Alumni Association filed a motion to dismiss the complaint with prejudice on February 23, 2022, and the University filed its response on March 14, 2022.

On July 5, 2022, nearly six months after it filed its complaint, and more than three months since its response to the motion to dismiss, the University filed a motion for preliminary injunction. Besides arguing that it was likely to succeed on the merits, which it said created a presumption of irreparable harm, the University cited three "immediate and irreparable" injuries: (1) loss of the ability to control the use of the University's marks and trade dress; (2) confusion among the public as to the University's affiliation with the Alumni Association; and (3) "actual and/or imminent threatened loss to the University's valuable goodwill and reputation with the consuming public." Neither the motion nor the supporting affidavits, however, explained the reasons for the University's delay in filing the motion, which appeared to be based on the same facts as alleged in the complaint.

The district court issued an order directing a response from the defendants and a joint notice from the parties as to the necessity for an evidentiary hearing. The court stated that, after reviewing

the parties' submissions, it would set a hearing if it determined that an evidentiary hearing was necessary; otherwise, it would "issue a ruling based on the parties' written submissions."

The Alumni Association responded in opposition to the motion for preliminary injunction, though it did not address the University's delay in seeking an injunction. Both parties also filed separate notices requesting an evidentiary hearing.

On November 22, 2022, the district court entered an order denying the University's motion for preliminary injunction, without an evidentiary hearing. The court found that, when the complaint was filed in January 2022, it was apparent that the Alumni Association had no intention of disassociating itself from the University, but the University "waited six months before filing the [motion for preliminary injunction] without any explanation for the delay." That delay in seeking injunctive relief, the court stated, "weigh[ed] heavily against any finding of irreparable harm." The court denied the motion on that basis.

The University moved for reconsideration, arguing that the district court erred in denying the motion based on the six-month delay without hearing evidence on the issue. And it maintained that it had reasonable grounds for waiting, including (1) good-faith settlement negotiations regarding a stipulated injunction; and (2) the Alumni Association's "continuously evolving" infringing conduct in the six-month period. The University claimed it "had to wait to file the [motion for preliminary injunction] until there was some clear understanding of where the [d]efendants were headed

in terms of their infringement." The University also argued in the alternative that it was entitled to a presumption of irreparable harm based on its likelihood of success, citing 15 U.S.C. § 1116(a).

The University supported its motion with an affidavit by lead counsel, Scott Cichon. Cichon wrote that, in November and December of 2021, it "became clear" that the Alumni Association had not ceased its infringing activity despite "previously represent[ing] that they would," so the University began to gather evidence for its eventual complaint in January 2022. Settlement negotiations began after the Alumni Association obtained litigation counsel on February 8, 2022. Cichon sent terms of settlement to opposing counsel on February 22, 2022, and those terms were discussed at two settlement conferences in March 2022. Then, in April 2022, Cichon was injured in an accident, so the next conference was delayed until May 16, 2022. After this conference, Cichon did not "timely hear from [d]efendants' counsel again on settlement negotiations," prompting the University to draft and file the motion for preliminary injunction.

The district court denied the motion for reconsideration. The court stated that the University had the burden to demonstrate imminent irreparable harm and that it was "plain from [the University's] filings that it failed to carry that burden." The court noted that the length of delay was not in dispute, and that the University offered no reasons for the delay in the motion for preliminary injunction. Further, according to the court, the University should have anticipated the need to explain the delay, since "the legal

proposition that a delay in seeking a preliminary injunction weighs strongly against a finding of imminent irreparable harm is not novel."

The district court also rejected the University's asserted reasons for the delay. It found that the University could have moved for preliminary injunctive relief while negotiating a potential settlement, and that, despite the Alumni Association's "continuously evolving" conduct, its motion for preliminary injunction was based on conduct known to the University when it filed its complaint. The University now appeals.

## III.

We apply a "highly deferential" standard of review to a district court's denial of a preliminary injunction, reversing "only if we find that the court clearly abused its discretion." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (*en banc*). "[A]s its name implies, the abuse-of-discretion standard allows a range of choices for the district court." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quotation marks omitted). Nevertheless, a court abuses its discretion if it makes clearly erroneous factual findings, follows improper procedures, applies the incorrect legal standard, or makes a clear error of judgment. *Id.*

## IV.

A district court may grant a preliminary injunction only if the movant shows the following: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant

outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176. "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Id*. (cleaned up). It is "never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quotation marks omitted).

We have recognized that "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal*, 840 F.3d at 1248. "Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id*. Thus, "[a] delay in seeking a preliminary injunction of even only a few months— though not necessarily fatal—militates against a finding of irreparable harm." *Id*.

In *Wreal*, for example, we held that the district court did not abuse its discretion in denying a preliminary injunction based on a five-month delay between the filing of the complaint and the motion for preliminary injunction. *Id*. at 1248–49. We noted that the plaintiff had "failed to offer any explanation" for the delay either before the district court or on appeal, and that "the preliminary-injunction motion relied exclusively on evidence that was available to Wreal at the time it filed its complaint in April 2014." *Id*. As a result, we stated, the court reasonably concluded that the plaintiff

"failed to demonstrate an imminent injury that would warrant the 'extraordinary and drastic remedy' of a preliminary injunction." *Id.* at 1249.

Here, the district court did not abuse its discretion in concluding that the University failed to demonstrate an imminent injury that would warrant the extraordinary and drastic remedy of a preliminary injunction. *See id.* Similar to the plaintiff in *Wreal*, the University delayed seeking a preliminary injunction for nearly six months after it initiated this action in January 2022. And when it did eventually file its motion for preliminary injunction, it failed to offer any reason for the delay and relied almost exclusively on evidence that was available to it when it filed its complaint. Thus, the circumstances indicated that the University failed to act with "speed and urgency" in seeking an injunction, which "necessarily undermine[d] a finding of irreparable harm."[2] *Id.* at 1248.

The University responds that it had good reasons to wait and that the district court erred by failing to hold an evidentiary hearing and to consider its evidence on that issue. Evidentiary hearings must be held "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312

---

[2] That remains the case even assuming the University would have been entitled to a presumption of irreparable harm based on a likelihood of success on the merits, about which we express and imply no opinion. *See* 15 U.S.C. 1116(a). Such a presumption is rebuttable, and the University's delay "necessarily undermine[d] a finding of irreparable harm." *Wreal*, 840 F.3d at 1248.

(11th Cir. 1998).  But "where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Id*. at 1313.  Cases in between these categories are left to the sound discretion of the district court to balance "between speed and practicality versus accuracy and fairness." *Id*.

No evidentiary hearing was required here.  As the district court observed, the length of the delay was not in dispute.  And the lack of a hearing did not prevent the University from submitting evidence regarding the delay.  At the time the University filed its complaint in January 2022, our precedent was clear that "a delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal*, 840 F.3d at 1248.  So while the court certainly could have raised the issue *sua sponte* at a hearing, we cannot say it was unreasonable for the court to expect the University to address in its motion the reasons for the six-month delay in seeking a preliminary injunction.

In any case, the district court went on to consider and reject the University's proffered reasons for the six-month delay, and we see nothing to indicate an abuse of the court's discretion.  It was clear to the University when it filed its complaint that the Alumni Association, despite representations to the contrary, continued to "willfully infringe upon and dilute the University's Marks by using them without permission."  And despite the Alumni Association's allegedly "continuously evolving" conduct, the University's

motion for preliminary injunction relied almost exclusively on evidence available to it when it filed its complaint. While the University also cites settlement negotiations as a reason to wait, the settlement negotiations did not even begin until February 2022, well over a month after the complaint was filed, and the Alumni Association filed a motion to dismiss around the same time, which hardly suggests an imminent settlement. Nor is it clear why the University could not have moved for a preliminary injunction to protect itself from the Alumni Association's shifting strategies while a settlement was negotiated. The district court reasonably concluded that the University's conduct did not reflect a sense of "speed and urgency" consistent with its claim of irreparable harm.

Given our "exceedingly narrow" standard of review, *Wreal*, 840 F.3d at 1248, we cannot say that the district court abused its discretion by concluding that the University failed to establish irreparable harm or by denying a preliminary injunction on that basis. We affirm the denial of the University's motion for preliminary injunction.

**AFFIRMED.**