[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11572

Non-Argument Calendar

_____

WILLIAM FRANKLIN ADAMS,
TONI MICHELLE ADAMS,
AMY LESTER ASTIN,
BENJAMIN DEREK BAKER,
SAMANTHA LEE BAKER, et al.,

Plaintiffs-Appellees,

*versus*

BORDEAU METALS SOUTHEAST, LLC,
a Georgia limited liability company,
BB&K HOLDINGS, LLC,
a Tennessee limited liability company,
BB&K HOLDINGS TN, LLC,
a foreign limited liability company,

BORDEAU METALS, LLC,
a Tennessee limited liability company,
SECOND JOHN DOE THROUGH TENTH JOHN DOE,
Inclusive,

                                        Defendants-Appellants,


FIRST JOHN DOE THROUGH TENTH JOHN DOE,
inclusive ,

                                        Defendant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:23-cv-00299-WMR

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Since late 2022, Defendant Bordeau Metals, LLC ("Bordeau") has operated an open-air scrap metal processing facility in Floyd County, Georgia. The facility sits on a parcel of land zoned "heavy industrial," and because of the nature of its

work, it often produces "booming," "screeching," and "banging" noises.

The plaintiffs are 50 individuals who live in a residential subdivision known as "the Trail," which abuts the land where Bordeau operates its facility. On December 1, 2023—over a year after Bordeau began operating—the plaintiffs sued the defendants[1] in state court, alleging that the sounds coming from the Bordeau facility constituted a nuisance under both Georgia and Floyd County law. The state court set a hearing for December 29, 2023, to consider the plaintiffs' accompanying request for preliminary injunctive relief, but the defendants removed the case to federal district court before any hearing took place.

About four months after the removal, on April 4, 2024, the plaintiffs moved for a preliminary injunction, seeking to bar the defendants "from continuing to operate and conduct a metal scrapping business" on the land next to the Trail. After a two-day evidentiary hearing, the district court concluded that the plaintiffs had satisfied all the requirements for preliminary injunctive relief. It therefore enjoined the defendants from "continuing to engage in secondary metals processing and metal recycling" on the subject property. The district court did not analyze whether the plaintiffs' delay in seeking injunctive relief negated their claims of irreparable

---

[1] The four named defendants are each LLCs that have the same two members: Bradford Bordeau and Kristen Brooks. Both Bordeau and Brooks are citizens of Tennessee. We refer to the four LLCs collectively as "the defendants."

harm.  Nor did it analyze whether a narrower injunction would have adequately relieved the plaintiffs' injuries.

After careful review, we vacate the district court's order granting the preliminary injunction and remand for further proceedings.  The district court made no findings or conclusions about the plaintiffs' alleged delay in seeking preliminary injunctive relief.  We thus remand for the district court to do so in the first instance.  Additionally, if the district court on remand finds that a preliminary injunction is proper, it should enjoin the defendants' operations only as necessary to relieve the plaintiffs' injuries.

## I.    Background

### A.    Factual Background

The 50 plaintiffs are residents of the Cumberland Trails Subdivision—also known as "the Trail"—in Floyd County, Georgia. The Trail consists of one street with "a few dozen homes" on either side.

Abutting the Trail to the west is the Floyd County Industrial Park, where about a dozen businesses operate "in various industries."  When several plaintiffs bought their homes in the late 1990s and early 2000s, the industrial park was zoned for light industrial use.  According to the plaintiffs, the Trail back then— despite being by the industrial park—was a "quiet and peaceful neighborhood."

But about 20 years later, things started to change.  In 2019, the Georgia Power Company contracted with Brandenburg

24-11572                Opinion of the Court                5

Industrial Service Company to demolish Georgia Power's decommissioned power plant, Plant Hammond.[2]  Defendant Bordeau, in turn, contracted with Brandenburg to buy the scrap metal from the Plant Hammond demolition.  Bordeau planned to "process[], recycle[e], and sell[]" the scrap metal to its customers.

Bordeau needed somewhere to set up its new scrap metal business.  So in May 2022, Defendant BB&K Holdings TN, LLC bought from the Floyd County Development Authority an 18-acre tract of land in the Floyd County Industrial Park.[3]  By that time, the industrial park had been rezoned for heavy industrial use.  And it just so happened that the tract of land purchased by BB&K for Bordeau to conduct its scrap metal business was the portion of the industrial park that directly abutted the Trail.

Bordeau began processing and recycling the scrap metal in late 2022, and by January 2023, Trail residents had already begun

---

[2] Plant Hammond was located in Rome, Georgia.

[3] The sales contract between the Development Authority and BB&K included a "[u]se" provision that stated:

> The Purchaser has represented to Seller that Purchaser intends to use the Property as a "Lay Down" yard for purposes of gathering, collecting, cutting, resizing and storing for a limited period certain metal items which have been obtained from the demolition and scrapping of Plant Hammond under a separate contract with Georgia Power Company.  Purchaser understands that there shall be no other waste material to be stored or collected on the Property.

The use provision was also included in an exhibit to the deed.

complaining about the noise.  The plaintiffs reached out to several government officials and attended Floyd County Commission meetings, explaining that the noises coming from the Bordeau facility were a nuisance.  And in February 2023, Bordeau's contract to buy the Plant Hammond scrap metal from Brandenburg was terminated.[4]  Even so, in May 2023, Bordeau began operating again, processing scrap metal from sources other than Plant Hammond.

According to the plaintiffs' testimony in the district court, since Bordeau began operating, they have constantly heard "booming," "screeching," and "banging" while at their homes. The noises have occurred at intermittent times, usually from Monday to Saturday, and from "as early as 6:30am" until "between 5pm and 7pm."  The plaintiffs also testified that they have even heard the noise on several Sundays, including on Easter in 2024. Bordeau's operations, according to the plaintiffs, have left them "annoyed," "stressed," "hurting," and "angry."

B.    *Procedural History*

The plaintiffs filed suit on December 1, 2023, in the Superior Court of Floyd County, Georgia.  They alleged that the noise coming from the Bordeau facility constituted a nuisance under both Georgia and Floyd County law.  They also requested a temporary restraining order and interlocutory injunction

---

[4] The motivations and merits of the contract termination are unclear and are the subject of another lawsuit in the district court.

prohibiting the defendants from "the current use and operations being conducted, including but not limited to gathering, collecting, cutting, resizing and storing metal items obtained from metal demolition and scrapping."

The superior court set a hearing for December 29, 2023, to consider the plaintiffs' request for preliminary injunctive relief. However, before the hearing could take place, the defendants removed the case to the U.S. District Court for the Northern District of Georgia on December 20, 2023.

Once in the district court, the plaintiffs learned that they needed to amend their complaint to add Bordeau Metals, LLC as a defendant to obtain effective relief.[5]   To that end, they moved to amend their complaint on January 9, 2024.  The defendants did not oppose the motion, and the plaintiffs filed a proposed amended complaint at the end of January.

About two months after filing the proposed amended complaint—and while the motion to amend was still pending—the plaintiffs moved for a preliminary injunction on April 3, 2024.  They requested that the district court enjoin the defendants "from continuing to operate and conduct a metal scrapping business" on the subject property during the pendency of the case.

---

[5] The plaintiffs needed to add this defendant because, as the defendants made clear in a declaration filed with their notice of removal, "[t]he operations at the [p]roperty which Plaintiffs complain[ed] of were conducted by Bordeau Metals, LLC," not the other LLCs originally named in the complaint.

Eight days later, on April 11, 2024, the plaintiffs filed an emergency motion asking the district court to rule on their still pending motion to amend their complaint. The court promptly granted the motion before the preliminary injunction hearing held on April 23 and 25.

After the hearing, the court granted the plaintiffs' request for a preliminary injunction. As relevant here, the court found that the plaintiffs were likely to suffer irreparable harm absent an injunction because the plaintiffs established that the Bordeau facility was causing "strains on relationships and marriages, the loss of freedom to enjoy outdoor activities on [the plaintiffs'] properties, and the deprivation of peace inside [the plaintiffs'] homes." The court concluded that these "injuries cannot be adequately compensated through monetary remedies." Accordingly, having found that all other preliminary injunction elements were satisfied, the court enjoined the defendants "from continuing to engage in secondary metals processing and metal recycling" at the subject property.

The defendants timely appealed.

## II.    Standard of Review

We review a grant of a preliminary injunction—as well as the scope of the injunction—for abuse of discretion. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1129 (11th Cir. 2005); *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 450 F.3d 505, 518 n.25 (11th Cir. 2006). A district court abuses its discretion "when its factual findings are clearly erroneous, when it follows improper

procedures, when it applies the incorrect legal standard, or when it applies the law in an unreasonable or incorrect manner." *Wreal v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). In addition, "[i]t is well-settled that a district court abuses its discretion when it drafts an injunction that is unnecessarily broad in scope." *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1205 (11th Cir. 2009).

## III.    Discussion

On appeal, the defendants make two main arguments. First, they argue that the plaintiffs' delay in seeking a preliminary injunction negates any showing of irreparable harm—a requirement to obtain a preliminary injunction. Relatedly, they argue that the district court erred in not at least considering this argument before issuing the preliminary injunction. Second, the defendants argue that even if injunctive relief is proper, the preliminary injunction here is overbroad because it enjoins all scrap metal processing operations at the Bordeau facility, rather than enjoining the operations only to the extent that they give rise to a nuisance. We first address delay and irreparable harm. We then turn to the scope of the preliminary injunction.[6]

---

[6] We do not reach the defendants' arguments about the balancing of the equities, including the argument that the district court erred in interpreting and considering the use provision in the sales contract and deed between the Development Authority and BB&K. Nor do we reach the defendants' argument that the district court erred in waiving the bond requirement under Federal Rule of Civil Procedure 65. The merits of these arguments necessarily turn on the scope of any injunction. *See Winter v. Nat'l Res. Def. Council, Inc.*,

### A.    Delay and Irreparable Harm

To obtain a preliminary injunction, movants must show that (1) they have a "substantial likelihood of success on the merits," (2) "irreparable injury will be suffered unless the injunction issues," (3) "the threatened injury to the movant[s] outweighs whatever damage the proposed injunction may cause the opposing part[ies]," and (4) "if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).    All four prerequisites are required for a preliminary injunction. *Wreal*, 840 F.3d at 1248.    Failure to meet even one "dooms" any preliminary injunctive relief. *Id.*

As far as the preliminary injunction elements go, the defendants take issue primarily with the district court's conclusions as to irreparable harm.   Because we vacate and remand on the irreparable harm requirement, we assume without deciding that the other preliminary injunction elements are met.

"A showing of irreparable harm is the *sine qua non* of injunctive relief." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted).   "A delay in seeking a preliminary injunction

---

555 U.S. 7, 24 (2008) (stating that courts must "balance the competing claims of injury and must consider the effect on each party of granting or withholding the requested [injunctive] relief"); Fed. R. Civ. P. 65(c) (stating that the purpose of the bond is to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained").   Because we ultimately conclude that the district court must reconsider its preliminary injunction ruling, evaluating these issues at this stage would be premature.

of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal*, 840 F.3d at 1248. "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "For this reason, our sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* (collecting cases); *see also id.* (faulting the plaintiff for not offering "any explanation for its five-month delay" in seeking a preliminary injunction).

Here, the record shows that the plaintiffs may have delayed in seeking a preliminary injunction. The defendants began their operations at the subject property sometime in late 2022. At least some plaintiffs were complaining about the noise resulting from those operations as of January 2023. But despite being bothered by the noise, the plaintiffs did not file suit until about 11 months later in December 2023, more than a year after the noise began. Moreover, once the case was removed to federal court, the plaintiffs waited about four more months before moving for a preliminary injunction.

For their part, the plaintiffs do offer some explanation. They highlight that they reached out to several local officials and government agencies at various points after the noise began. And they point out that when they filed suit in state court, they

requested a temporary restraining order and interlocutory injunction. They also explain that they had to wait until they added Bordeau Metals, LLC as a defendant in federal court before moving for preliminary injunctive relief.

Faced with these facts, the defendants raised the issue of the plaintiffs' alleged delay below. But as the defendants point out on appeal, the district court did not evaluate whether any alleged delay negated the plaintiffs' claims of irreparable harm.

Given the parties' competing arguments and the fact-intensive nature of the issue, we do not weigh in on the effect—if any—of the plaintiff's alleged delay in seeking preliminary injunctive relief. Instead, we vacate the preliminary injunction and remand for the district court to consider this issue in the first instance. *See McCord, Condron & McDonald Inc. v. Carpenters Loc. Union No. 1822*, 464 F.2d 1036, 1036–37 (5th Cir. 1972)[7] (vacating preliminary injunction and remanding case for district court to make findings of fact and conclusions of law in the first instance); *Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1158 (11th Cir. 2024) (remanding for district court to consider an issue in the first instance). On remand, the district court should consider (1) the plaintiffs' alleged delay between suing and moving for a preliminary injunction, (2) the plaintiffs' alleged delay between

---

[7] In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the Fifth Circuit issued before September 30, 1981.

suffering from the noise complained of and initially suing, and (3) the plaintiffs' reasons for each delay.

### B.    Scope of the Preliminary Injunction

Although we vacate and remand on the issue of irreparable harm, we also address the scope of the preliminary injunction to provide guidance to the district court in further proceedings. *See Compulife Software*, 111 F.4th at 1158 (citing *United States v. White*, 846 F.2d 678, 688 (11th Cir. 1988)).[8]

"Injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003). Once a court identifies "the inadequacy that produced the injury in fact that the plaintiff[s] ha[ve] established," the court should enjoin the defendants' actions only as needed to "provide complete relief" *from that inadequacy*. *Georgia v. President of the United States*, 46 F.4th 1283, 1303 (11th Cir. 2022) (quotation omitted); *see also Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to address the plaintiff's particular injury."). Any injunction that is "more burdensome" than is necessary to provide complete relief is

---

[8] Below, the defendants primarily argued that no preliminary injunction, regardless of scope, was warranted. But they also requested that the district court "narrowly tailor" the relief given to the plaintiffs "in the event the [district court] [was] inclined to issue a preliminary injunction." On appeal, the defendants prominently argue that the injunction issued by the district court is overbroad. In response, the plaintiffs do not contend that the scope of the injunction is not properly before us. Instead, they make arguments on the merits. For these reasons, we address the scope of the injunction here.

impermissibly broad. *Georgia*, 46 F.4th at 1303 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

In this case, the plaintiffs claim that the noises coming from the defendants' scrap metal processing facility constitute a nuisance under Georgia[9] and Floyd County[10] law. Their main quarrel is with how loud the noises are, describing them as "booming," "screeching," and "banging." The plaintiffs also object to the facility being an "open-air operation" that works from "sunrise to sunset" for five to six days a week.

---

[9] Georgia's nuisance statute provides:

> A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.

O.C.G.A. § 41-1-1.

[10] The Floyd County Code of Ordinances defines a nuisance as "[w]hatever is dangerous or detrimental to human life or health and whatever renders or tends to render soil, air, water or food impure or unwholesome." Floyd County Code of Ordinances § 2-11-1. The Code gives the following as an example of a noise-based nuisance: "General noises which are blatantly foreign to the normal order of a community which shall cause the disturbance of peace, quiet and comfort of residents or any reasonable person of normal sensitiveness in the area." *Id.* § 2-11-7(3). And it provides factors to consider in determining whether a noise is a nuisance, including volume, intensity, proximity to "residential sleeping facilities," and whether the noise is "usual or unusual" and "natural or unnatural," among other things. *Id.* § 2-11-7(4).

That said, the plaintiffs do not argue that *all* noise coming from the defendants' facility constitutes a nuisance. And for good reason: both Georgia and Floyd County law proscribe noise only to the extent that it causes "hurt, inconvenience, or damage," *see* O.C.G.A. § 41-1-1, or "the disturbance of peace, quiet or comfort," Floyd County Code of Ordinances § 2-11-7(3). To put it simply: Under either law, noise is allowed. Excessive noise is not. And because excessive noise is the only unlawful noise under the applicable laws, the district court could enjoin the defendants' activities only as needed to abate just that—excessive noise. *See Califano*, 442 U.S. at 702 ("[T]he scope of injunctive relief is dictated by the extent of the violation established.")

Here, the district court enjoined the defendants from "continuing to engage in secondary metals processing and metal recycling" on the subject property. In other words, the court enjoined the facility's operations *in toto*. But in doing so, the district court made no finding that a complete shutdown was needed to abate the alleged nuisance-level noises coming from the facility. If a narrower injunction would have abated the alleged nuisance without imposing unnecessary restraints on the defendants, then the district court failed to properly tailor the injunction. *Cf. Wilson v. Evans Hotel Co.*, 4 S.E.2d 155, 158 (Ga. 1939) ("Where the business alleged to be a nuisance is lawful, and can be carried on without the injuries complained of, the defendant should not be restrained from carrying it on at all, but [only] from so carrying it on as to be

injurious and offensive . . . .").[11]  Because the record leaves unclear whether a complete shutdown of the facility was required to provide complete relief to the plaintiffs, the district court should reconsider the scope of any injunction imposed.

### IV.    Conclusion

For these reasons, we **VACATE** the district court's order granting the preliminary injunction and **REMAND** for further proceedings.

**VACATED AND REMANDED**.

---

[11] In their brief, the defendants claim that the district court could have tailored the injunction by restricting the facility's operating hours, "limiting noise to a certain decibel threshold," "prescrib[ing] noise levels not to exceed some threshold a certain number of times per day," or some combination thereof. At this time, we express no opinion on whether these tailoring measures were required or would suffice.